Filed 6/27/23  McCluskey v. Hendricks CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| VERONICA McCLUSKEY, | B318445 |
| | (c/w B315161) |
| Plaintiff and Appellant, | |
| | (Los Angeles County |
| v. | Super. Ct. No. BC671735) |
| | |
| WILLIAM HENDRICKS et al., | |
| | |
| Defendants and Respondents. | |

APPEAL from orders and a judgment of the Superior Court of Los Angeles County.  Lia Martin, Judge.  Affirmed.

Law Office of Michael Mogan and Michael S. Mogan for Plaintiff and Appellant.

Miller Wanner, Kathrin A. Wanner and Kirsten E. Miller for Defendants and Respondents.

_____

Defendants and respondents William Hendricks (William), and Roxanne Hendricks (Roxanne)[1] and plaintiff and appellant Veronica McCluskey (McCluskey) were very briefly Airbnb cohosts in the rental of an apartment owned by defendants. When their relationship soured, this litigation ensued. After entertaining multiple motions and overseeing a trial, the trial court entered judgment in favor of defendants on McCluskey's complaint and in favor of William on his cross-complaint against McCluskey. McCluskey appeals, challenging numerous trial court orders as well as the judgment; McCluskey's attorney, Michael S. Mogan (Mogan), challenges an award of monetary sanctions issued against him.

We affirm.

## FACTUAL BACKGROUND

Defendants, who are married, "lived in Iowa [and] owned an apartment in Los Angeles that they rented out on a short-term basis through Airbnb. In May 2017, [McCluskey] agreed to act as their cohost. In that role, she prepared the apartment for new guests. In early June 2017, [William] was addicted to opiate pain pills, and he sometimes had pills delivered to locations where he was traveling. Because [William] planned to be traveling to Los Angeles, he arranged to have pills mailed to the apartment." (*McCluskey v. Hendricks* (Sept. 17, 2019, B292470) [nonpub. opn.], at p. 2.)

On June 6, 2017, McCluskey mistakenly opened a single package addressed to William containing pills; she and William

---

[1] Because defendants share the same last name, when we refer to them individually, we use their first names. No disrespect is intended.

2

had a text exchange about it, in which William apologized and said that he would make arrangements for the pills to be removed from the apartment by someone else.

"Soon after, [the parties'] relationship deteriorated because [McCluskey] was not getting paid through Airbnb. Also, [McCluskey] accused [William] of making derogatory comments about her to customers. She ended their business relationship and texted that she would forward everything to Airbnb." (*McCluskey v. Hendricks*, *supra*, B292470, at p. 3.)

At this point, McCluskey "launched [her] campaign against William." She "decided . . . that Airbnb should not allow [defendants] to be hosts," so she lied, making a host of derogatory false statements about William.

Airbnb commenced an investigation into McCluskey's allegations and requested information from defendants. Defendants responded to the request by making statements about McCluskey. Shortly thereafter, Airbnb ended its business relationship with McCluskey.

After Airbnb deactivated McCluskey's account, McCluskey continued to make false statements about William, such as accusing him of being involved in a drug smuggling ring.

**PROCEDURAL BACKGROUND**

I. *The pleadings; McCluskey's motion to strike portions of the cross-complaint*

On August 9, 2017, McCluskey initiated this action against defendants. The second amended complaint, which is the operative pleading, alleges 10 causes of action: intentional infliction of emotional distress, intentional interference with contractual relations, intentional interference with prospective business advantage, retaliation, wrongful termination, retaliation

3

for whistleblowing (Lab. Code, § 1102.5, subd. (b)), retaliation for refusing to engage in illegal conduct (Lab. Code, § 1102.5, subd. (c)), defamation, sexual harassment, and negligent infliction of emotional distress. These claims stem from McCluskey's inadvert opening of the one package containing drugs, her communications with Airbnb regarding the drugs, William's alleged false statements about her, Airbnb's cancellation of her reservations, and defendants' alleged retaliation against McCluskey for reporting the illegal drugs and her refusal to participate in the illegal "drug shipment operations."

William filed a cross-complaint against McCluskey alleging defamation.[2] He alleged that McCluskey defamed him by publishing false statements that he was "a criminal and a drug dealer," as well as part of a drug smuggling and/or trafficking ring. He requested, inter alia, general and compensatory damages, as well as special damages.

On June 17, 2020, McCluskey moved to strike portions of the cross-complaint pursuant to Code of Civil Procedure sections 435 and 436.[3] Her motion was denied.

---

[2] On February 8, 2018, McCluskey moved to strike the cross-complaint pursuant to California's anti-SLAPP (strategic lawsuit against public participation) statute. The trial court denied her motion; McCluskey appealed, and we affirmed the trial court's order. (*McCluskey v. Hendricks*, *supra*, B292470, at p. 1.) The trial court proceedings were stayed while that appeal was pending. The stay was lifted on February 26, 2020.

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

4

McCluskey thereafter filed a motion for leave to file a third amended complaint as well as an amended motion and a second amended motion. Her motion was denied.[4]

## II. *Discovery motion*

During the course of litigation, McCluskey filed a motion to compel certain discovery responses from Roxanne. The trial court denied McCluskey's motion and ordered Mogan, McCluskey's attorney, to pay $1,400 in monetary sanctions.

## III. *Defendants' motion for summary judgment*

On March 20, 2020, defendants moved for summary judgment or, in the alternative, summary adjudication of each cause of action pled in McCluskey's second amended complaint. McCluskey filed two ex parte applications seeking to continue the hearing on the motion.[5] Both applications were denied. Ultimately, the trial court granted defendants' motion in large part, adjudicating nine of the 10 causes of action in their favor; only the defamation cause of action survived.

## IV. *McCluskey's motion for summary judgment*

On March 3, 2021, McCluskey moved for summary judgment of the defamation cause of action alleged against her by William in his cross-complaint. The trial court denied her motion.

---

[4] Several months after her motion was denied, it seems that McCluskey filed an ex parte application asking for leave to file a third amended complaint. This request was also denied.

[5] McCluskey also requested a continuance in her opposition to defendants' motion.

## V.  *Trial*

On February 26, 2020, the trial court set the matter for a court trial to commence June 7, 2021.

Thereafter, McCluskey filed four ex parte applications asking that the trial be continued.  All four requests were denied.

McCluskey also filed two ex parte applications to request a jury trial or grant relief from jury waiver.  Those applications were denied, and a bench trial commenced June 9, 2021.

After McCluskey presented her case-in-chief on her claim for defamation, defendants moved for judgment pursuant to section 631.  The trial court granted their motion.

The matter then proceeded to trial on William's defamation claim against McCluskey.  After hearing all of the evidence and considering the parties' arguments, the trial court found in favor of William, awarding him $800,000.

McCluskey's motions for a new trial were denied.

## VI.  *Judgment and appeal*

Judgment was entered, and this timely appeal ensued.

## DISCUSSION

McCluskey prepared a voluminous appellant's appendix (over 11,000 pages) and filed lengthy appellate briefs, lodging objections to nearly every ruling the trial court made throughout this protracted litigation.  Her appeal seems rooted in the hopes that "something will stick" and we will conclude that there must have been prejudicial error given such an exhaustive appeal.

In so doing, McCluskey ignores the basic principles of appellate review.  An appellate court presumes that the judgment is correct.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  We adopt all intendments and inferences to affirm the judgment unless the record expressly contradicts them.  (*Ibid.*)  An

6

appellant has the burden of overcoming the presumption of correctness, and we decline to consider issues raised in an opening brief that are not properly presented or sufficiently developed to be cognizable. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793; *People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19, abrogated in part on other grounds by *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*).) "It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness." (*Benach*, *supra*, at p. 852; see also *Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 CalApp.4th 1190, 1206, fn. 11 ["It is not our responsibility to develop an appellant's argument"].)

With these principles in mind, we turn to the issues raised in McCluskey's appeal.

I. *McCluskey's motion for leave to file a third amended complaint*

McCluskey argues that the trial court abused its discretion in denying her second amended motion for leave to file a third amended complaint.

A. Relevant factual background

As set forth above, McCluskey initiated this action against defendants on August 9, 2017. On May 14, 2018, she filed her second amended complaint.

On March 20, 2020, defendants filed their motion for summary judgment/adjudication, seeking judgment on all 10 causes of action alleged against them in the second amended complaint. The motion was scheduled to be heard on June 4, 2020.

At some point, the hearing on defendants' motion was continued to September 23, 2020.

While that motion was pending, and before McCluskey's opposition was due, on August 17, 2020, McCluskey filed a motion for leave to file a third amended complaint. Specifically, she sought to add more detailed allegations to support her defamation cause of action. The hearing on the motion was set for February 17, 2021.

While McCluskey's motion for leave was pending, the trial court heard defendants' motion for summary judgment/adjudication. On November 30, 2020, it granted the motion in large part, adjudicating nine of the 10 causes of action in favor of defendants and against McCluskey. The only cause of action that survived was McCluskey's defamation claim.

Nearly two months later, on January 22, 2021, McCluskey filed an amended motion for leave to file a third amended complaint. Her motion specifically notes: "On November 30, 2020 this Court granted [defendants'] motion for summary adjudication in part on nine of ten of Plaintiff's claims. . . . Plaintiff respectfully asks this Court to allow Plaintiff . . . leave to amend the complaint to reinstate all nine claims which this Court granted summary adjudication for on November 30, 2020 based on Defendants['] egregious conduct in providing false testimony in response to a simple discovery request."

Four days later, McCluskey filed a second amended motion for leave to file a third amended complaint.

Defendants opposed McCluskey's motion.

On February 23, 2021, the trial court denied McCluskey's motion seeking leave to file a third amended complaint. It reasoned: "Plaintiff repeatedly argues in the motion and reply that the new causes of action are based on the same general set of facts, and they allege only new legal theories. Plaintiff was not

8

diligent in moving for leave to amend years after the action was filed. Plaintiff failed to explain why she did not seek to amend the complaint earlier."

Also, defendants established prejudice. They "brought a motion for summary judgment, an expensive motion, which was successful as to most of the causes of action in the operative complaint. According to plaintiff's own motion, these causes of action are based on the same general facts. If plaintiff were to be granted the leave she seeks, then defendants would be faced with either bringing the new causes of action to trial or filing a new dispositive motion. As only the defamation cause of action survived adjudication, the trial was narrowed to the facts supporting defamation. The new causes of action would greatly expand the scope of the trial, as they are not based on the same facts as defamation. Because trial is in less than four months, there is not enough time before trial to bring a motion for summary adjudication. There would have to be a trial continuance. There is also the expense of another summary adjudication motion. Plaintiff's failure to timely bring these causes of action has denied defendants the opportunity to have them adjudicated as part of the initial motion."

Finally, to the extent McCluskey requested reinstatement of adjudicated causes of action, her request amounted to an improper motion for reconsideration.[6]

---

[6] Sometime between May 21, 2021, and June 2, 2021, McCluskey filed an ex parte application, again seeking leave to file a third amended complaint. The trial court denied this request on June 2, 2021. On appeal, plaintiff is not challenging this order.

9

B.  <u>Applicable law and standard of review</u>

A trial court has "wide" discretion, "in furtherance of justice" to "allow a party to amend [her] pleading."  (§ 473, subd. (a)(1); *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280.)  We accordingly review a trial court's denial of a request to amend for an abuse of that discretion.  (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175 (*Melican*).)

While leave to amend a complaint should be given liberally (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 938–939), there are circumstances in which leave to amend is properly denied.  In particular, denying a request to amend a complaint may be appropriate when an unreasonable delay in seeking amendment prejudices the defendant.  (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486–487; *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 613 (*Leader*).)  Prejudice can include the time and expense associated with opposing a legal theory that a plaintiff belatedly seeks to change.  (*Melican, supra*, 151 Cal.App.4th at p. 176.)

C.  <u>Analysis</u>

Applying these legal principles, we conclude that the trial court did not err.  As the trial court expressly noted, McCluskey was not diligent in moving for leave to amend and defendants established that they would be prejudiced by an amended pleading.  After all, they had successfully brought a motion for summary adjudication, resolving nearly all of the causes of action alleged against them.  At that point, allowing McCluskey leave to file an amended pleading would have expanded the issues for trial and potentially forced defendants to incur the additional expense of another motion for summary judgment.  And, as the

10

trial court correctly found, McCluskey's motion was in large part an improper motion for reconsideration of its order granting defendants' motion for summary adjudication.

To the extent McCluskey sought to amend her defamation cause of action, an amendment was not necessary. McCluskey raised the additional facts that she wanted to allege at trial.

On appeal, McCluskey asserts that she attempted to get, but could not secure, an earlier date for her hearing; her attorney was busy; and defendants admitted to some kind of discovery misconduct in late 2021 that would have changed the outcome of their summary judgment motion and McCluskey's motion to amend. These arguments fail. <u>First</u>, there is no evidence in the appellate record that McCluskey wanted an earlier date but could not secure one. (Cal. Rules of Court, rule 8.204(a)(1)(C)[7] [an appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].) <u>Second</u>, McCluskey offers no legal authority in support of her assertion that her attorney's "busy schedule" is grounds to set aside the trial court's order. (*Benach*, *supra*, 149 Cal.App.4th at p. 852 ["An appellant must provide . . . legal authority to support [her] contentions"].) <u>Third</u>, McCluskey's contention that defendants obscured evidence is unfounded.

---

[7] All further references to a rule are to the California Rules of Court.

11

II. *McCluskey's motion to strike the allegations in the cross-complaint*

McCluskey argues that the trial court erred in denying her motion to strike portions of the cross-complaint.

A. Relevant procedural background

On June 17, 2020, McCluskey filed a motion to strike 36 separate items from William's seven-page cross-complaint. According to her amended motion, these items were irrelevant and improper and did not constitute defamation.

William opposed the motion, noting that many of the arguments had already been rejected by the trial court when it denied McCluskey's anti-SLAPP motion, an order affirmed on appeal.

The trial court denied McCluskey's motion, addressing each argument raised in her motion. First, it rejected McCluskey's contention that because she did not identify William by name in her communications, there was no defamation. "The communications with Airbnb were part of a continuing communication between McCluskey and Airbnb concerning [William's] rental and . . . activities. It may be established that the emails were about him, even if he was not identified by name. [Citation.] As to the communications on social media and to Fox News, [William] may be able to establish that it could be determined the communications were about him."

Second, "McCluskey argues that stating [William] receiving drugs is not defamatory as it is not damaging to his reputation or character. . . . The context of the communications may lead to a reasonable inference that [William] was more involved with drugs than receiving a single package of pills. Also it cannot

12

reasonably be argued that stating someone is a drug dealer would not be damaging to that person's reputation or character."

Finally, "[a]s to the request for an order restraining McCluskey from making defamatory statements about [William], defendants asserting the affirmative defense of the First Amendment have the burden to show that expressive activities 'merit First Amendment protection.' [Citation.] If the statements are established as defamatory, they may not be protected under the First Amendment."

B. <u>Standard of review and relevant law</u>

Section 435, subdivision (b)(1), provides, in relevant part, that a party may move to strike any part of a cross-complaint. (§ 435, subd. (b)(1).) Section 436 continues: "The court may, upon a motion made pursuant to Section 435 . . . and upon terms it deems proper: [¶] (a) Strike out any irrelevant, false, or improper matter inserted in any pleading. [¶] (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." (§ 436, subds. (a) & (b).)

We review a trial court order denying a motion to strike for abuse of discretion. (*Leader*, *supra*, 89 Cal.App.4th at p. 612.)

C. <u>Analysis</u>

We readily conclude that the trial court did not abuse its discretion in denying McCluskey's motion to strike portions of William's cross-complaint. Read as a whole, the pleading states a claim for defamation. It alleges that McCluskey made a host of false and derogatory remarks about William on social media, to Airbnb, and to Fox News. The pleading does not contain improper or irrelevant allegations, and nothing in McCluskey's

13

appellate briefs provides a basis for setting aside the trial court's order.

III. *Defendants' motion for summary adjudication*

McCluskey argues that the trial court erred in (1) denying her requests to continue the hearing on defendants' motion for summary judgment, (2) overlooking certain procedural errors with the motion, and (3) summarily adjudicating nine of the 10 causes of action in favor of defendants.

A. Requests for continuance

1. *Relevant procedural background*

On March 20, 2020, defendants filed a motion for summary judgment, or, in the alternative, summary adjudication of McCluskey's second amended complaint. The hearing was originally set for June 4, 2020, but later moved to September 23, 2020.

On August 24, 2020, McCluskey filed her first ex parte application asking that the hearing and filing deadlines be continued. The trial court denied the application, partly because she failed to make the requisite showing under rule 3.1202(c).[8]

One week later, McCluskey filed her second ex parte application to continue the hearing and filing deadlines. Again, her request was denied.

Eight days later, McCluskey filed her opposition to defendants' motion. In her opposition, McCluskey requested a continuance pursuant to section 437c, subdivision (h), asserting:

---

[8]    Rule 3.1202(c) provides: "An applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte."

14

"Plaintiff filed four motions to compel seeking discovery responses which Plaintiff needs to further meet her burden of proof in opposing this motion and undermine Defendants['] credibility."

On November 30, 2020, the trial court issued its ruling on defendants' motion. Regarding McCluskey's request for a continuance, the trial court determined: "The court is not inclined to grant the request for continuance. Plaintiff has submitted substantial evidence in opposition to the motion. It does not appear that the evidence she hopes to obtain through the discovery at issue would change the rulings on the issues for adjudication."

The trial court added: "There is no dispute that the working relationship the parties had with one another was of a short [duration] (from late May 2017 through mid-June 2017), and that there was only one occasion when the plaintiff and the defendants were physically present with one another. The communications between plaintiff and the defendants were in written form, mainly via text messages and emails. There simply is no more evidence to be obtained with respect to the parties' interactions with one another during their approximately one-month long business relationship."

2. *Relevant law and standard of review*

Section 437c, subdivision (h), provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. The application to continue the

15

motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

"'When a party makes a good faith showing by affidavit demonstrating that a continuance is necessary to obtain essential facts to oppose a motion for summary judgment, the trial court must grant the continuance request.'" (*Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 532.) "The affidavit is required to show "'(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain [or discover] these facts.'" [Citations.]" (*Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 152–153.)

"[A] party who seeks a continuance under section 437c, subdivision (h), must show why the discovery necessary to oppose the motion for summary judgment or summary judication could not have been completed sooner."[9] (*Braganza v. Albertson's LLC, supra*, 67 Cal.App.5th at p. 156.)

_____

[9] "In *Cooksey v. Alexakis* (2004) 123 Cal.App.4th 426, at pages 255 to 257, the Second District Court of Appeal, Division Five, observed that there was a split of opinion among the California appellate courts 'as to the effect of the absence of such an explanation' of why discovery was not completed sooner, when a party seeks a continuance under section 437c, subdivision (h). [Citation.] That split of authority continues to this day. [Citations.] The *Cooksey* court noted that the courts in the First, Second, and Sixth Appellate Districts had upheld denials of continuance requests, at least partly on the ground that the party seeking the continuance had had adequate time to complete the

16

"The decision to grant or deny a continuance request under section 437c, subdivision (h), is vested in the trial court's discretion [citation], and the court's ruling is reviewed for an abuse of discretion. [Citation.]" (*Braganza v. Albertson's LLC*, *supra*, 67 Cal.App.5th at p. 152.)

### 3. *Analysis*

McCluskey offers no reason to overturn the trial court's decision to deny her requests to continue the hearing on defendants' motion. While she claims that there was reason to believe that additional facts existed, she fails to explain how that hypothetical evidence would have created a triable issue of fact as to any of the nine causes of action adjudicated against her. The fact that in person depositions were impractical and unsafe did not warrant a continuance; during the pandemic, many proceedings, including depositions, occurred virtually.

### B. Procedural objections

McCluskey levies several procedural objections to defendants' motion for summary judgment, including the fact that defendants' reply separate statement offered hundreds of additional pages of argument and therefore should have been stricken. Alternatively, the trial court should have considered her amended separate statement. But she offers no legal argument explaining why these alleged errors compel reversal of the trial court's order. (See rule 8.204(a)(1)(B) [every appellate brief must "support each point by argument"]; *Benach*, *supra*, 149 Cal.App.4th at p. 852 [appellant bears the burden of supporting a point with reasoned argument].)

---

discovery. [Citations.]" (*Braganza v. Albertson's LLC*, *supra*, 67 Cal.App.5th at p. 155.)

17

C.  Defendants' evidence and McCluskey's opposition

In their motion, defendants argued that there were no triable issues of fact as to any of the causes of action alleged against them.  In support, Roxanne and William each filed a declaration.  Attached to their declarations were copies of text message exchanges between defendants and McCluskey as well as e-mails between defendants and Airbnb.

On September 8, 2020, McCluskey filed her opposition to the motion, claiming that there were triable issues of material fact as to each cause of action.  In particular, she asserted that defendants caused Airbnb to terminate its business relationship with her.  She also argued that defendants terminated her employment either because she refused to participate in illegal activity or because she reported the illegal activity to Airbnb and law enforcement.  Defendants also retaliated against her by subjecting her to adverse employment actions, including (1) defendants' refusal to pay her for work she had done on June 16, 2017, (2) defendants' demand that she give them two weeks' notice before quitting, and (3) William's derogatory remark about her to an Airbnb guest.  In support, McCluskey submitted a declaration.

D.  Trial court order

The trial court summarily adjudicated nine of McCluskey's 10 causes of action in defendants' favor.[10]  Regarding the first cause of action for intentional infliction of emotional distress, the trial court found: "It is undisputed that . . . William had illegal drugs shipped to the rental unit at a time when [he] was not

---

[10]     McCluskey's third cause of action for defamation survived and went to trial.

18

present and [McCluskey] was in charge of the property. It is undisputed that [McCluskey] discovered the illegal drugs. It is also undisputed that . . . William did not intend for [McCluskey] to open the package. He apologized, and arranged for someone else to remove the pills from the premises. [McCluskey] testified that she opened the package by accident, thinking that she was opening a package that had a USB inside it." The trial court determined as a matter of law that these undisputed facts did not constitute extreme and outrageous conduct.

The second cause of action for intentional interference with contractual relations and third cause of action for intentional interference with prospective economic advantage failed because McCluskey could not establish causation as a matter of law. "Defendants submitted evidence of the investigation Airbnb conducted and how the company arrived at its decision to sever their relationship with [McCluskey]. The evidence defendants submit shows that . . . the decision to delist [McCluskey] from Airbnb and cancel her pending reservations was made by Airbnb."

Regarding the fourth cause of action for retaliation, the trial court found no causal link between any alleged protected activity and any adverse employment action. After all, the undisputed facts established that at the time McCluskey left the job (either June 16 or 17, 2017), "defendants did not know that [she] had reported [their] conduct to Airbnb or to the police. [She] did not disclose her reports to defendants, and, in fact, stated she had not made reports, for fear of retaliation."

The fifth cause of action for wrongful termination also failed. "There [was] no triable issue of fact as to whether [McCluskey] was constructively discharged because of a refusal to

19

participate in activities she believed were illegal or defendants' belief that [McCluskey] may report activities she believed to be illegal."

Similarly, the sixth cause of action for retaliation for whistleblowing failed because there was "no evidence that defendants had any belief that [McCluskey] would make [a report about the delivery of illegal drugs] to either Airbnb or to the police."

Regarding the seventh cause of action for retaliation for failure to engage in illegal conduct, the trial court found no evidence of an adverse employment action. Defendants' request for two weeks' notice did not constitute an adverse employment action as a matter of law, particularly when, as here, McCluskey was the first to mention giving defendants two weeks' notice. Likewise, William's alleged derogatory comment about McCluskey was not an adverse employment action.

Regarding the ninth cause of action for sexual harassment, the trial court found that there was no evidence that the alleged misconduct was severe or pervasive, as required by Civil Code section 51.9.

Finally, the tenth cause of action for negligent infliction of emotional distress failed as a matter of law. "The only alleged wrongful conduct which could threaten [McCluskey] with physical injury [was] William's statement to [a third party] to 'throw [her] out.' That statement does not support this cause of action, as it was not made to [McCluskey]. . . . The other conduct alleged threatened only damage to [McCluskey's] financial interests, her Airbnb business," which is insufficient.

20

E. <u>Relevant law and standard of review</u>

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) "To secure summary judgment, a moving defendant may . . . disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citation]." (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465; *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 482.)

We review the trial court's order de novo. "To analyze the issues, 'we follow the traditional three-step analysis. "We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]" [Citation.]' [Citation.]" (*Kaney v. Custance* (2022) 74 Cal.App.5th 201, 213.)

F. <u>McCluskey's nine causes of action fail as a matter of law</u>

1. *Intentional infliction of emotional distress*

"The elements of a cause of action for intentional infliction of emotional distress are (i) outrageous conduct by defendant, (ii) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress.

21

[Citation.]" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 300.) "'Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.] Generally, conduct will be found to be actionable where the 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"' [Citation.]" (*KOVR-TV, Inc. v. Superior Court* (1995) 31 Cal.App.4th 1023, 1028.)

In the first cause of action, McCluskey alleges that she inadvertently opened a mailed package containing William's illegal drugs. We agree with the trial court that this one time incident is not outrageous as a matter of law.

On appeal, as she did below, McCluskey argues that the destruction of her Airbnb cohost business, Roxanne's "demand[]" that McCluskey give defendants two weeks' notice before quitting, and William's statements to Airbnb all constitute extreme and outrageous conduct. But those were not the theories alleged in the second amended complaint.[11]

It well-settled that "'"[t]he function of the pleadings in a motion for summary judgment is to delimit the scope of the issues. . . "' and to frame 'the outer measure of materiality in a summary judgment proceeding.' [Citation.] . . . 'The materiality of a disputed fact is measured by the pleadings [citations], which "set the boundaries of the issues to be resolved at summary judgment." [Citations.]' [Citation.] Accordingly, the burden of a

_____

[11] To the extent this cause of action is duplicative or derivative of other claims, it fails for the same reasons as those do.

22

defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings. [Citations.] [¶] Furthermore, "'"[t]he [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings."'" [Citation.]' [Citation.]" (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.)

While McCluskey did allege that defendants harassed, intimidated, and committed "differential treatment" of her, there is no evidence to create a triable issue of fact concerning such a broad, generic claim.

2. *Intentional interference with contractual relations and intentional interference with prospective business advantage*

The elements of a cause of action for intentional interference with contractual relations are (1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1141.) Actions for intentional interference with at-will contracts also require some "independently wrongful act" apart from just the interference with the contract itself. (*Id.* at p. 1148.)

Similarly, the elements of a cause of action for intentional interference with prospective business advantage include (1) an economic relationship between the plaintiff and a third party, with the probability of future economic benefit to the plaintiff;

23

(2) the defendant's knowledge of that relationship; (3) the defendant's conduct that interfered with that relationship; (4) the defendant's conduct was independently wrongful, meaning wrongful by some measure beyond the fact of the interference itself, (5) the defendant's intent, and (6) the defendant's acts proximately caused economic harm to the plaintiff. (*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 538.)

In her second and third causes of action, McCluskey alleges that defendants "intentionally engaged in acts designed to induce a breach or disruption" of her contract and prospective business relationship with Airbnb. But as the trial court correctly found, there is no evidence that defendants caused Airbnb to stop doing business with McCluskey. Rather, the undisputed evidence shows that Airbnb conducted an investigation after McCluskey reached out to it about defendants' alleged illegal activities; as part of that investigation, Airbnb requested information from defendants; and Airbnb then decided to terminate its business relationship with McCluskey. There is no evidence (or even argument on appeal) that Airbnb cancelled its business relationship with McCluskey solely based upon what defendants told Airbnb.

### 3. *Retaliation*

Retaliation under the Fair Employment and Housing Act requires that the plaintiff establish that she was engaged in a protected activity as an employee; her employer subjected her to an adverse employment action; and there is a causal link between the protected activity and the employer's action. (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 874.)

24

McCluskey alleges that defendants retaliated against her for reporting William's drug activity to Airbnb and the police.

McCluskey's claim fails because, as the trial court aptly found, the undisputed facts established that defendants did not know that she had reported William's drug activity to either Airbnb or the police. In fact, McCluskey admitted in her opposition to defendants' motion that she told defendants that "she had not contacted Airbnb," even though she in fact already had. She does not even argue on appeal that they knew. Thus, she did not and cannot prove the necessary causal link to prevail on this claim.

4. *Wrongful termination*

"[A]n employer has no right to terminate employment for a reason that contravenes fundamental public policy as expressed in a constitutional or statutory provision. [Citation.] An actual or constructive discharge in violation of fundamental public policy gives rise to a tort action in favor of the terminated employee. [Citations.]" (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252.)

In her fifth cause of action, McCluskey alleges that she was required to endure offensive conduct while working for defendants and that she reported the misconduct to Airbnb and law enforcement. Thereafter, her employment was terminated.

McCluskey did not present any evidence that her termination (actual or constructive) was wrongful. There is no evidence that McCluskey's employment with defendants ended because she refused to break the law or because defendants believed she was going to report their illegal activity.

25

5. *Retaliation for whistleblowing*

In the sixth cause of action, McCluskey alleges that defendants retaliated against her after she complained to the police about the shipment of illegal drugs.

Labor Code section 1102.5, subdivision (b), provides, in relevant part: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency."

Here, as the trial court found, McCluskey offered no evidence that defendants either knew that McCluskey had made a report or believed that she would file such a report. Notably, she does not argue otherwise on appeal. Thus, her claim fails as a matter of law.

6. *Retaliation for failure to engage in illegal conduct (Lab. Code, § 1102.5, subd. (b))*

In the seventh cause of action, McCluskey alleges that defendants retaliated against her when "she refused to participate in the drug shipment operations promulgated by [defendants] because [McCluskey] believed they were illegal." But, there is no evidence of any act of retaliation.

Urging us to conclude otherwise, McCluskey asserts, as she did below, that defendants retaliated against her "by refusing to pay her for work she had done on June 16" and demanding two weeks' notice before she could leave. She further argues William retaliated against her by making a derogatory remark about her to an Airbnb guest.

There is no evidence that defendants refused to pay McCluskey on June 16, 2017. Rather, the undisputed evidence

26

shows that there was an issue with payment between the cohosts and Airbnb. Not only was the issue rectified that day, but William also offered in the meantime to get the monies to McCluskey outside the Airbnb platform.

We agree with the trial court that Roxanne's request, albeit characterized by McCluskey as a demand, for two weeks' notice does not constitute an adverse employment action. Defendants could not force McCluskey to remain in their employment for two weeks and the undisputed evidence shows that she did not; by June 17, 2017, she "decided [that] she was going to abandon her job."

Finally, to the extent there was evidence that William said something to an Airbnb guest about McCluskey, that comment does not constitute retaliation as a matter of law. McCluskey offers no legal authority or argument to the contrary. (*Benach*, *supra*, 149 Cal.App.4th at p. 852.)

### 7. *Sexual harassment*

In the ninth cause of action, McCluskey alleges a claim for sexual harassment (Civ. Code, § 51.9) against William.

As McCluskey concedes, Civil Code section 51.9 limits liability to sexually harassing conduct that is "'pervasive or severe.'" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1045.) Despite her acknowledgment of the law, she offers no evidence or argument that she was subjected to pervasive or severe sexual harassment.

On appeal, McCluskey directs us to her statement in her declaration that an Airbnb guest told her that William asked him to throw McCluskey out, and she felt "physically threatened by such comments." This argument is ridiculous at best. Aside from

the fact that there is no admissible evidence of the comment,[12] it does not constitute pervasive or severe sexually harassing conduct. And, fairly read, it does not threaten physical violence against McCluskey; rather, William was using the idiom "throwing her out" colloquially—not literally. Finally, William did not utter the remark to McCluskey; it was relayed by the guest to her.

McCluskey also argues that William sexually harassed her by (1) belittling her safety concerns in an e-mail to Airbnb in response to its questions after McCluskey and defendants' cohosting relationship had ended, and (2) calling her a "crazy bitch" to an Airbnb guest. Neither of these complaints constitutes pervasive sexual harassment as a matter of law. Notably, William did not make his "crazy bitch" comment to McCluskey herself; even if he had, it was an isolated remark. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283.)

### 8. *Negligent infliction of emotional distress*

Negligent infliction of emotional distress requires the same elements as negligence: (1) duty, (2) breach of that duty, (3) causation, and (4) damages. (*Klein v. Children's Hospital Medical Center* (1996) 46 Cal.App.4th 889, 894.)

McCluskey asserts that defendants "were negligent in not preventing [her] from intercepting the drugs and kept her in such environment and asked her to commit a crime . . . . " "When [McCluskey] discovered the drugs she immediately suffered

---

[12] Defendants objected to this statement in McCluskey's declaration. The trial court sustained their objection. McCluskey does not challenge the trial court's evidentiary ruling on appeal.

extreme emotional distress and wanted to quit and [defendants] refused to let her quit immediately." For the reasons set forth above, these unfounded allegations do not create a triable issue of material fact.

IV. *McCluskey's motion for summary judgment of the cross-complaint*

McCluskey asserts that the trial court erred in denying her motion for summary judgment of William's cross-complaint. She contends that she presented undisputed evidence that her statements were true and protected by the litigation privilege (Civ. Code, § 47, subd. (b)).

A. <u>Relevant procedural background</u>

1. *Cross-complaint*

On January 16, 2018, William filed a cross-complaint for defamation against McCluskey. He alleged that McCluskey "unequivocally referred" to him as a "criminal and a drug dealer. These statements were disparaging and false." She also allegedly made statements that William was running a drug ring and was a drug smuggler.

2. *Motion and opposition*

McCluskey filed a motion for summary judgment and/or adjudication. She argued that the statements she made "were not false and/or were privileged." In support, she submitted a separate statement, which included evidence that William purchased illegal drugs over the Internet.

William opposed the motion. In his responsive separate statement, he pointed out that McCluskey's purported evidence did not support her claim that he trafficked drugs. At most, the evidence showed that he sometimes arranged to have drugs delivered for his personal use.

### 3. *Trial court order*

The trial court denied McCluskey's motion, noting: "The separate statement submitted in support of the motion fails to provide any facts regarding the alleged statements at issue. To the extent [McCluskey] is relying on affirmative defenses, the court cannot evaluate those defenses without reference to the facts, content, and circumstances surrounding the statements at issue.

"[McCluskey's] argument that William admitted to drug smuggling in his supplemental response to special interrogatories [citation] is unsupported by the evidence. William stated that he was addicted to drugs, purchased drugs on the black [market] internet sites for his own personal use, and had them shipped to the location he was at the time.

"There are no facts in the separate statement addressing William's damages.

"[McCluskey] failed to meet her burden of establishing that she is entitled to summary judgment."

### B. Relevant law and standard of review

As set forth above, a party in a civil case is entitled to summary judgment if she can "show that there is no triable issue as to any material fact." (§ 437c, subd. (c).) We review an order denying a motion for summary judgment de novo. (*Hill Brothers Chemical Co. v. Superior Court* (2004) 123 Cal.App.4th 1001, 1005.)

The elements of a cause of action for defamation are: (a) a publication that is (b) false, (c) defamatory, (d) unprivileged, and (e) has a natural tendency to injure or cause special damage. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.)

30

C. <u>Analysis</u>

The trial court properly denied McCluskey's motion for summary judgment and/or adjudication. Put simply, her motion was inadequate. It did not present undisputed evidence that her alleged statements about William were either true or privileged.

On appeal, McCluskey directs us to the litigation privilege (Civ. Code, § 47, subd. (b)). But she fails to demonstrate, let alone argue, how the challenged statements were made in the course of a judicial proceeding.

V. *Trial*

A. <u>McCluskey's requests for continuances</u>

McCluskey argues that the trial court erroneously denied her multiple requests for a continuance of trial.

1. *Relevant procedural background*

On February 26, 2020, the matter was set for trial to begin on June 7, 2021.

On March 12, 2021, McCluskey filed an ex parte application for a trial continuance on the grounds that defendants concealed the identity of at least four witnesses. Defendants opposed the application. On March 16, 2021, the trial court denied McCluskey's request, noting that the requirements of rule 3.1202(c) had not been met.

On May 19, 2021, McCluskey filed a second ex parte application to continue the trial. Defendants opposed the application. On May 21, 2021, the trial court denied her request.

Undeterred, on June 2, 2021, McCluskey filed her third ex parte application to continue the trial. Defendants again opposed her request, highlighting the trial court's repeated finding of a lack of diligence on the part of McCluskey and her

31

attorney, Mogan.  The trial court denied this ex parte application as well.

The day before trial, McCluskey filed a fourth ex parte application to continue trial.  Defendants seem to have opposed this request.[13]  Unsurprisingly, the trial court denied this final request, reasoning:  "The application does not make an affirmative factual showing of irreparable harm, as required by California Rules of Court rule 3.1202(c).  Additionally, the application fails to make the disclosures required by rule 3.1202(b)."[14]

2. *Relevant law and standard of review*

Continuances of trial in civil cases are disfavored, assigned trial dates are firm, and parties and their counsel must regard the trial date as certain.  (Rule 3.1332(a), (c).)  A party seeking a continuance must make the request by a noticed motion or an ex parte application, with supporting declarations, as soon as reasonably practicable once the need for the continuance is discovered.  (Rule 3.1332(b).)  A trial court "may grant a continuance only on an affirmative showing of good cause requiring the continuance."  (Rule 3.1332(c).)  In ruling on a

_____

[13]     No written opposition is part of the appellate record, even though the table of contents indicates that there is one.  We were provided with a declaration from defendants' counsel, who explained why defendants objected to a continuance.

[14]     Rule 3.1202(b) mandates:  "If an ex parte application has been refused in whole or in part, any subsequent application of the same character or for the same relief, although made upon an alleged different state of facts, must include a full disclosure of all previous applications and of the court's actions."

motion for continuance, the trial court must consider all relevant facts and circumstances, including the proximity of the trial date; whether previous continuances were granted; the length of the requested continuance; prejudice that parties or witnesses will suffer as a result of a continuance; whether the case is entitled to preferential trial setting; and whether the interests of justice are best served by a continuance.  (Rule 3.1332(d).)

We review a trial court's decision denying a request for a continuance for abuse of discretion.  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823.)  The party challenging the denial of a continuance, in this case McCluskey, bears the burden of showing an abuse of discretion.  (*Mahoney v. Southland Mental Health Associates Medical Group* (1990) 223 Cal.App.3d 167, 170.)

### 3.  *Analysis*

McCluskey did not meet her burden on appeal.  Other than using the phrase "abuse of discretion," she does not offer any sort of explanatory argument showing that the trial court abused its discretion.

### B.  McCluskey's jury waiver

McCluskey argues that she was wrongfully deprived of a jury trial.

### 1.  *Relevant procedural background*

On February 26, 2020, the matter was set for a nonjury trial to begin on June 7, 2021.  The trial court's minute order indicates:  "No jury fees posted by Plaintiff or Defendant in compliance with C.C.P. Section 631."  McCluskey did not object. In fact, on March 6, 2020, she filed and served notice of the trial court's ruling, confirming that jury fees had not been posted and a "Non-Jury Trial" was scheduled.

33

A little over one year later, on March 12, 2021, McCluskey filed an ex parte application to request a jury trial or grant relief from a jury waiver. She noted that her second amended complaint demanded a jury trial. And, she provided evidence that she had paid the jury fee deposit of $150 on May 24, 2018.

Defendants opposed her application: "The Court ruled **over a year ago** that the parties had waived their right to a jury trial and set this case for a bench trial. Plaintiff did not object to this determination at the time or at any time since then until now, less than three months before trial. And Plaintiff does so on an ex parte basis, giving minimal notice and providing little opportunity for Defendants to fully respond."

On March 16, 2021, the trial court denied the application on the grounds that the requirements of rule 3.1202(c) had not been met. But, it expressly did so "without prejudice to the applicant filing a noticed motion."

On or around June 2, 2021, McCluskey filed another ex parte application to request a jury trial or grant relief from jury waiver. Again, defendants opposed her request. The trial court denied the ex parte application, noting: "The application does not comply with CRC rule 3.1202(c). Further, the applicant does not explain [why she did] not file a noticed motion as suggested in the order on March 16, 2021 . . . ."

2. *Standard of review and relevant law*

The California Constitution provides that "[t]rial by jury is an inviolate right and shall be secured to all," but "[i]n a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute." (Cal. Const., art. I, § 16.) A party waives the right to a jury through oral consent or by failing to announce that a jury is required at the time the cause is set for

34

trial, if it is set upon notice or stipulation, or within five days after notice of setting if it is set without notice or stipulation. (§ 631, subds. (f)(3) & (f)(4).) A trial court may refuse a jury trial where there has been a waiver, and the litigants are not thereby deprived of any constitutional right. (*Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 388.)

If a party has waived the right to a jury trial under section 631, subdivision (g) of that statute gives the trial court discretion to grant relief from such waiver: "The court may, in its discretion upon just terms, allow a trial by jury although there may have been a waiver of a trial by jury." (§ 631, subd. (g).) "In exercising its discretion, the trial court may consider delay in rescheduling jury trial, lack of funds, timeliness of the request and prejudice to the litigants." (*Gann v. Williams Brothers Realty, Inc.* (1991) 231 Cal.App.3d 1698, 1704 (*Gann*).) Prejudice to the court or its calendar are also relevant considerations. (*Ibid.*; see also *Wharton v. Superior Court* (1991) 231 Cal.App.3d 100, 104; *Glogau v. Hagan* (1951) 107 Cal.App.2d 313, 318, superseded by statute on other grounds as stated in *Silver Organizations, Ltd. v. Frank* (1990) 217 Cal.App.3d 94, 98.)

A trial court's discretionary decision to grant or deny relief under section 631, subdivision (g) will not be disturbed absent an abuse of discretion. (*McIntosh v. Bowman* (1984) 151 Cal.App.3d 357, 363.) "A court does not abuse its discretion where any reasonable factors supporting denial of relief can be found even if a reviewing court, as a question of first impression, might take a different view." (*Gann, supra*, 231 Cal.App.3d at p. 1704.)

### 3. *Analysis*

We conclude that the trial court did not abuse its discretion. McCluskey waited until three months before trial

(and a year after the matter was set for a bench trial) before seeking relief from her alleged jury waiver. Furthermore, her first ex parte application did not comply with rule 3.1202(c). And, despite the trial court's express ruling that McCluskey could bring a noticed motion, she insisted on proceeding with a second ex parte application without any explanation.

C. Motion for judgment

McCluskey argues that the trial court erred in granting defendants' motion for judgment pursuant to section 631.8. She does not challenge the evidence. Instead, she argues that the trial court erred in not making the requisite statutory findings.

1. *Relevant procedural background*

At the conclusion of McCluskey's case-in-chief, defendants moved for judgment pursuant to section 631.8.

The trial court granted their motion. It found, inter alia: "[I]t is very clear that Airbnb requested some information and that the defendants responded to that. What they stated, they were not stating in terms of fact other than filling in details about what happened. But when it comes to things about Miss McCluskey, they were not giving statements of fact, it's very clear they were giving opinions." The trial court specifically found that the evidence presented about the statements that defendants allegedly made were "not actionable" or "libelous."

2. *Relevant law*

If, after the plaintiff in a civil case rests her case-in-chief, the trial court weighs the plaintiff's evidence and concludes that "the plaintiff [has] failed to sustain [her] burden of proof," the trial court may "make findings of fact" and "render a judgment" in favor of the defense. (§ 631.8, subd. (a); *People ex rel. Dept. of*

36

*Motor Vehicles v. Cars 4 Causes* (2006) 139 Cal.App.4th 1006, 1012; *Pettus v. Cole* (1996) 49 Cal.App.4th 402, 424.)

### 3. *Analysis*

Here, the trial court explained in detail on the record its reasons for granting defendants' motion. It even allowed commentary after the ruling and further explained its reasoning. McCluskey did not request a written statement of decision. (§ 632.) Thus, there is no basis to reverse the judgment.

D. <u>McCluskey was not denied a fair opportunity to defend the allegations against her in the cross-complaint</u>

McCluskey argues that she was denied a fair trial when the trial court excluded William's discovery responses and refused to allow her to cross-examine William "about the extent of his illegal conduct" or "offer such evidence in support of her affirmative defenses of truth and substantial truth."

Put simply, the trial court did not err. William alleged, and provided supporting evidence at trial, that McCluskey falsely accused him of being a drug smuggler and part of a drug ring. After reviewing the entire (voluminous) appellate record as well as the parties' briefs, no evidence of a drug ring exists.[15] William's discovery response confirms what has been stated and

---

[15] Mogan's offer of proof at trial was anything but convincing. He wanted to ask William about his drug purchases from 2013 to 2016 because that testimony would purportedly show that William was "part of a drug smuggling ring [for five years]. That's not someone with a habit, that's someone—a long-term vexatious criminal . . . . And, so, it shows the pattern of it wasn't just one delivery." This argument was speculative, nonsensical, and cumulative as William had already testified to having had a severe drug addiction at the time.

what was proven: William suffered from drug addiction and illegally purchased drugs to support his addiction. There is no evidence of an illegal drug smuggling ring. It follows that the trial court did not err in refusing to allow McCluskey to ask questions about any such criminal activity.

VI. *Posttrial objections and motions*

A. <u>McCluskey's objections to the statement of decision</u>

1. *Relevant procedural background*

On September 13, 2021, the trial court announced its tentative decision on the cross-complaint.

On or about September 22, 2021, McCluskey requested a statement of decision. Her request included 175 specific questions that she wanted the trial court to address.

On October 28, 2021, the trial court issued its statement of decision. Regarding McCluskey's 175 "supposed 'principal, controverted issues,'" the trial court found: "A review of the request shows that [McCluskey] is asking the court to make written findings of fact and conclusions of law." Because section 632 does not require written findings of fact and conclusions of law, the trial court declined to do so. Furthermore, "[o]ther issues [McCluskey] ask[ed] the court to address involve[d] having the court evaluate evidence that [was] of no consequence to determining the defamation cause of action."

The trial court then turned to the merits of the trial. "In this trial, the parties have presented two Veronica McCluskeys. [William] presents the Veronica McCluskey who is vindictive. This McCluskey goes on the attack when she decides someone has messed with her money or with the image she has curated for herself via social media, and she cares not even a little bit about the damage she causes to others. Cross-defendant presents

38

Veronica McCluskey as someone who was worried that a child might accidentally ingest drugs the child thought might be candy, and out of her concern for such a child's safety, she took her concerns to the police and to the online rental company.  The evidence admitted at trial reveals which person she has been here."

The trial court went on to explain how after their business relationship ended, McCluskey "launched [a] campaign against William."  She made false statements to Airbnb in an attempt to get defendants' account deactivated.  But her plan "backfired. Instead the company decided to deactivate McCluskey's account. Lesson learned?  No.  McCluskey pressed on," by continuing to lie about defendants' "'drug smuggling ring.'"

The trial court described McCluskey as not believable.  She lied to Airbnb by informing them that defendants were involved in a "'drug ring'" and falsely claiming that packages of drugs were being delivered to the unit "'every few days.'"  She also lied to the police, falsely reporting that William wanted her to "ship the pills to his address in Iowa, and that [William] had a plan for McCluskey to pick up the pills and send them with her name as the sender so as not to raise" suspicions.  She also falsely informed the police officer that her lawyer had uncovered a lot of "'crazy information'" on William.  And, she lied to Airbnb about William stalking her.

Contrariwise, the trial court found William to be a credible witness.  "He testified that he was not a drug smuggler, had no interest in running a drug smuggling ring, and was not selling drugs during the relevant time period.  There was no evidence at trial showing otherwise.  [William] admitted that he is recovering from drug addiction."  His testimony, as well as that of Roxanne,

established that "the statements of fact that [McCluskey] made about him to Airbnb and others were false."

McCluskey objected to the statement of decision.

### 2. *Applicable law*

Section 632 requires a trial court to issue a statement of decision explaining the factual and legal basis for its decision upon the request of any party appearing at trial; "written findings of fact and conclusions of law [are] not . . . required." (§ 632.) "In rendering a statement of decision under Code of Civil Procedure section 632, a trial court is required only to state ultimate rather than evidentiary facts; only when it fails to make findings on a material issue which would fairly disclose the trial court's determination would reversible error result. [Citations.] Even then, if the judgment is otherwise supported, the omission to make such findings is harmless error unless the evidence is sufficient to sustain a finding in the complaining party's favor which would have the effect of countervailing or destroying other findings. [Citation.]" (*Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1230.)

We review McCluskey's claim of error for abuse of discretion. (*Hernandez v. City of Encinitas* (1994) 28 Cal.App.4th 1048, 1077, 1078–1079.)

### 3. *Analysis*

After careful review of the trial court's detailed, lengthy statement of decision, we conclude that the trial court did not err. The statement of decision is not ambiguous; rather, it is straightforward and clear. The trial court did not find McCluskey believable or sympathetic. And, after accurately setting forth the elements of defamation, the trial court summarized the evidence and explained why it supported

40

William's cause of action. Under these circumstances, "[t]he trial court was not required to provide specific answers [to McCluskey's questions because] the findings in the statement of decision fairly disclose the court's determination of all material issues." (*People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 525.)

B. McCluskey's motions for new trial

McCluskey argues that the trial court erred by denying her motion for a new trial on both the complaint and cross-complaint.

1. *Relevant procedural background*

a. Motion for a new trial on the complaint

As set forth above, following McCluskey's case-in-chief, the trial court granted defendants' motion for judgment pursuant to section 631.8. Almost immediately thereafter, McCluskey moved for a new trial. As is relevant to the issues raised in this appeal, she argued that the trial court committed an error of law, namely the trial court's refusal to let her question William about his criminal activity (illegally buying drugs on the Internet) and drug trafficking.

Defendants opposed the motion.

The trial court denied McCluskey's motion, reasoning, inter alia, that she "was not prejudiced by not being able to ask [William] questions about his April 2020 discovery responses."

b. Motion for a new trial on the cross-complaint

Following trial of William's cross-complaint against McCluskey, the trial court found in favor of William on his sole cause of action for defamation. McCluskey promptly filed a motion for new trial on a host of grounds. William opposed her motion.

The trial court denied McCluskey's motion.

41

## 2. *Relevant law and standard of review*

Section 657 provides, in relevant part: "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes materially affecting the substantial rights of such party: [¶] 1. Irregularity in the proceedings of the court . . . by which either party was prevented from having a fair trial. [¶] . . . [¶] 4. Newly discovered evidence, material for the party making the application, which [she] could not, with reasonable diligence, have discovered and produced at the trial. [¶] 5. Excessive . . . damages. [¶] 6. Insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law. [¶] 7. Error in law, occurring at the trial and excepted to by the party making the application." (§ 657.)

A new trial cannot be granted unless the trial court makes an "independent determination, under article VI, section 13 of the California Constitution, both that error occurred, and that the error prevented the complaining party from receiving a fair trial. [Citation.]" (*People v. Ault* (2004) 33 Cal.4th 1250, 1262.)

"The denial of a new trial motion is reviewed for an abuse of discretion, except that a trial court's factual determinations are reviewed under the substantial evidence test." (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 514, fn. 7.)

## 3. *Analysis (motion for new trial on complaint)*

The trial court did not err in denying McCluskey's motion for a new trial on the complaint. Her sole assignment of error is an alleged error of law (§ 657(7)), namely the trial court's refusal to allow her to ask William questions about his discovery responses, which supposedly demonstrated his participation in a

drug trafficking ring.  But, as the trial court aptly noted, McCluskey sought to ask those questions based upon "a lot of wild guesses" about what William's illegal drug purchasing history meant.  "We don't have any experts.  No experts in drug sales, no expert witness on drug smuggling.  Really, truly, no expert witness regarding what a heavy user would or would not consume.  [¶]  So, we're not going to use the trial to just make wild guesses about what we think just all on our own from what we may have seen on tv."  Thus, it acted well within its discretion in denying her request to ask William questions about his discovery responses.

4.  *Analysis (motion for new trial on cross-complaint)*

Likewise, the trial court did not err in denying McCluskey's motion for a new trial on the cross-complaint.

a.  Irregular proceedings

As set forth above, the proceedings were not irregular (and McCluskey's due process rights were not violated) when the trial court refused to allow her to ask William about his discovery responses; those responses do not demonstrate that he was involved in some sort of drug smuggling or trafficking ring. (§ 657(1).)

b.  Insufficient evidence

Section 657 provides, in relevant part:  "A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision, nor upon the ground of excessive . . . damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court . . . should have reached a different verdict or decision."  (§ 657.)

43

There is ample evidence to support the trial court's decision.[16] (§ 657(6).) As set forth above, William alleged in the cross-complaint that McCluskey made a host of defamatory statements about him. The evidence detailed in the trial court's statement of decision confirms that he proved all elements of his claim for defamation. <u>First</u>, there was overwhelming evidence that the alleged statements were false.[17] William testified that he has never been a drug smuggler, never run a drug ring, and never sold drugs. The envelope that McCluskey opened was "the one and only time" he sent drugs to that apartment. And, the e-mail exchange between McCluskey and Airbnb proves that she made these statements to someone other than William. (CACI No. 1704; *Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 884 ["Publication occurs when a defamatory statement is made to at least one third person"].)

<u>Second</u>, the false statements were not privileged under any of the theories raised by McCluskey. She claims that her statements were protected opinion. (*GetFugu, Inc. v. Patton*

[16] To the extent McCluskey asks us to reassess the credibility of the witnesses, we cannot and will not do so. (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518.)

[17] It follows that we reject McCluskey's claim that she proved the truth or substantial truth of her factual assertions. (See also *McCluskey v. Hendricks, supra*, B292470, at p. 25 ["Contrary to what [McCluskey] argues, her statements were not [substantially true]. The gist and sting of [McCluskey's] statements was that [William] is a sophisticated, for profit criminal who has dangerous and violent coconspirators who use the apartment as part of a criminal enterprise. There is a material difference between this type of criminal and an addict"].)

44

*Boggs LLP* (2013) 220 Cal.App.4th 141, 155 [statements of opinion are constitutionally protected].)  But, "where an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation.  [Citation.]  The critical question is not whether a statement is fact or opinion, but "'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.'" [Citation.]" (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1370.)

"'To determine whether a statement is actionable fact or nonactionable opinion, courts use a totality of the circumstances test of whether the statement in question communicates or implies a provably false statement of fact.  [Citation.]  Under the totality of the circumstances test, "[f]irst, the language of the statement is examined.  For words to be defamatory, they must be understood in a defamatory sense. . . .  [¶]  Next, the context in which the statement was made must be considered." [Citation.]' [Citation.]" (*Wong v. Jing*, *supra*, 189 Cal.App.4th at p. 1370.)

After reviewing all of the evidence presented at trial, there is nothing in the e-mails that suggests McCluskey was offering her opinion when she repeatedly accused William of being a drug dealer and trafficker.

Moreover, as the trial court aptly found, there is insufficient evidence to support the common interest defense. The common interest applies "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested . . . or (3) by a person who is requested by the person interested to give the information."  (Civ. Code, § 47, subd. (c).) Where there is actual malice, the privilege does not apply.  In this context, "malice" is "'a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another

45

person.' [Citation.] Malice may also be established by a showing that the publisher of a defamatory statement lacked reasonable grounds to believe the statement true and therefore acted with reckless disregard for [the cross-complainant's] rights. [Citations.]" (*Cuenca v. Safeway San Francisco Employees Fed. Credit Union* (1986) 180 Cal.App.3d 985, 997.)

The trial court's finding of malice is well supported by the appellate record. McCluskey "lacked any reasonable grounds for believing William . . . was operating a drug ring out of the . . . rental unit." Thus, the common interest privilege is inapplicable.

Finally, the statements had "a natural tendency to injure or cause special damages." (*Medical Marijuana, Inc. v. ProjectCBD.com*, *supra*, 46 Cal.App.5th at p. 884.) "False statements that accuse [a person] of criminal conduct are defamatory on their face. [Citation.]" (*Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 486.) As we previously noted, "[a] drug dealer/drug smuggler running a drug ring is a public scourge who poses an existential threat to society and earns high levels of opprobrium." (*McCluskey v. Hendricks*, *supra*, B292470, at p. 25.) For McCluskey to suggest that her statements did not have a tendency to injure is ludicrous.

### d. Error of law

McCluskey argues that a new trial is warranted because the trial court committed an error of law. (§ 657(7).) To the extent McCluskey repeats arguments, we reject them for the same reasons discussed throughout this opinion. She also asserts that because William's cross-complaint did not allege special damages, the trial court erred in awarding him such damages. She is mistaken. The cross-complaint alleges special damages.

46

### d. New evidence

McCluskey further argues that a new trial should have been granted based upon new evidence.  (§ 657(4).)

""'In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: "'1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.'" [Citations.]" [Citation.]  "In addition, 'the trial court may consider the credibility as well as materiality of the evidence in its determination [of] whether introduction of the evidence in a new trial would render a different result reasonably probable.' [Citation.]" [Citation.]' [Citation.]" (*Aron v. WIB Holdings* (2018) 21 Cal.App.5th 1069, 1078.)

Quite simply, McCluskey's appellate briefs fail to discuss any of these factors.  She does not explain why this evidence could not have been discovered sooner and why it would render a different decision.

### e. Damage award

Finally, McCluskey raises two challenges to the damage award:  (1) She asserts that the damage award is excessive; and (2) She contends that the judgment is legally erroneous because the trial court did not adequately explain its damage award. (§ 657(5) & (6).)  We disagree with both arguments.

First, her argument regarding excessive damages essentially repeats her argument that the damage award is legally erroneous—she asserts that the cross-complaint "only

47

included a general allegation" of damages and no special damages. Not so. William's cross-complaint adequately put McCluskey on notice of the damages he was seeking for his defamation cause of action.

Second, under a heading titled "The statements had a natural tendency to injure and/or caused special damage," the trial court explained in detail its damage award. (Bolding omitted.) In particular, there was evidence of William's fear "that people would think he was a drug smuggler. Not only that, he thought that people would use the information to rob him because they might think he had drugs or money on him." Furthermore, there was evidence that William's "professional reputation [had] been damaged." And, William "suffered emotional harm. [McCluskey's] statements about him, though false, impacted his recovery from drug addiction. He felt embarrassment, and shame. He wondered if these statements would stay with him for the rest of his life. The statements put a strain on his marriage."

The trial court concluded: "[W]hen the court takes into consideration the nature, breadth, depth, and the gist and sting of [McCluskey's] statements, and also considers how much [William] had invested in [cultivating] his reputation and career, the impact on him can be presumed significant. [McCluskey] set out to take, not just his Airbnb account, but [William] . . . himself down." Thus, it awarded him compensatory damages in the amount of $800,000.

VII. *Sanctions award*

McCluskey's counsel, Mogan, challenges a $1,400 sanctions award issued against him. He argues that sanctions were inappropriate because "[McCluskey's motion to compel] was well

48

supported by the law as was the separate statement." Furthermore, because Roxanne's opposition did not specifically name Mogan in her request for monetary sanctions, the trial court erred in awarding them.

A. <u>Relevant procedural background</u>

On April 13, 2020, Mogan, on behalf of McCluskey, filed a motion to compel Roxanne to submit a further response to special interrogatory No. 15, which requested information regarding communications between Roxanne and William. Roxanne had objected and refused to answer pursuant to the marital privilege (Evid. Code, § 980).

Roxanne opposed the motion and requested monetary sanctions in the amount of $1,400. The opposition did not specify whether the monetary sanctions were sought against McCluskey, Mogan, or both.

Mogan filed a reply brief on McCluskey's behalf.

Counsel appeared for the hearing via LACourtConnect and were given a copy of the trial court's tentative order. The tentative indicated the trial court's inclination to deny McCluskey's motion and order Mogan to pay monetary sanctions to Roxanne in the amount of $1,400. After entertaining oral argument, the trial court adopted its tentative ruling in full.

B. <u>Relevant law and standard of review</u>

"Orders regarding discovery are reviewed under the abuse of discretion standard. [Citations.] The trial court has broad discretion in deciding whether to impose sanctions and in setting the amount of monetary sanctions." (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789.) The test for abuse of discretion is traditionally recited as whether the trial court's decision

49

exceeded the bounds of reason. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.) The burden of showing such an abuse rests with the appellant. (*Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 401.)

C. <u>Analysis</u>

Here, the trial court acted well within its discretion in imposing monetary sanctions against Mogan. It found that the discovery motion he filed on McCluskey's behalf wholly lacked merit and was unsupported by legal authority. After all, McCluskey improperly sought a response to an interrogatory that specifically requested privileged information.

The fact that the opposition did not specifically name Mogan does not compel reversal of the trial court's order.[18] "'[A] party who appears and contests a motion in the court below cannot object on appeal . . . that he had no notice of the motion or that the notice was insufficient or defective.'" (*Alliance Bank v. Murray* (1984) 161 Cal.App.3d 1, 8.) Ordinarily, such a party "is deemed to waive the defect or irregularity in the notice." (*Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 342.) "[T]he party's appearance at the hearing and opposition on the merits showed that the notice 'served its purpose,' . . . and that any defect in the notice did not prejudice the party's

---

[18] Our conclusion might have been different had the opposition indicated that Roxanne was only seeking sanctions from McCluskey and not her attorney. (*Blumenthal v. Superior Court* (1980) 103 Cal.App.3d 317, 318 [sanctions award against an attorney was set aside because the motion only sought sanctions against the client; no mention was made of sanctions against counsel].)

50

preparation for the hearing and opportunity to be heard." (*Id.* at p. 343.)

Here, Mogan had ample opportunity to respond to (and oppose) Roxanne's request for monetary sanctions. He scheduled the hearing and argued the merits of his motion, both in his moving papers and in his reply brief, as well as at the hearing. And, prior to the hearing, he received a copy of the trial court's tentative ruling, which indicated the trial court's intention to impose sanctions against him. But, there is no evidence in the appellate record that he objected to any sort of sanctions award being imposed against him personally. Under these circumstances, we conclude that Mogan's due process rights were not violated.

## DISPOSITION

The orders and judgment are affirmed. Defendants are entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT


51